# IN THE UNITED STATES DISTRICT COURT

# FOR THE MIDDLE DISTRICT OF GEORGIA

# ALBANY DIVISION

| | |
|---|---|
| NAINESH PATEL, ) )     Plaintiff  ) )     vs.  ) ) GARRISON INVESTMENT ) GROUP, LP, and PREMIER ) HOSPITALITY GROUP - ) NEW STANTON II, ) )     Defendants.  ) _____ ) | Case No. COMPLAINT JURY DEMAND |

Plaintiff Nainesh Patel alleges:

1. This is an action for fraud and equitable relief in connection with the attempted sale to Plaintiff Nainesh Patel of a Marriott hotel (the "Property") controlled by Defendant Garrison Investment Group, LP ("Garrison") and owned of record by Defendant Premier Hospitality Group-New Stanton II ("Premier").

## PARTIES

2. Plaintiff is a citizen of the State of Georgia and a resident of Dougherty County, in this judicial district.

3. Defendant Garrison Investment Group, LP ("Garrison") is a Delaware

limited partnership whose principal place of business is in New York, New York. Plaintiff is informed and believes, and on that basis alleges, that Garrison does not have any partner who is a citizen of Georgia.

4. Defendant Premier Hospitality Group-New Stanton II ("Premier") is a Pennsylvania limited partnership whose principal place of business is in New York, New York. Plaintiff is informed and believes, and on that basis alleges, that Premier's general partner is Garrison Pittsburgh New Stanton Propco LLC, a Delaware limited liability company whose principal place of business is in New York, New York. Plaintiff is informed and believes, and on that basis alleges, that neither Premier nor Garrison Pittsburgh New Stanton Propco LLC has any partner or member who is a citizen of Georgia.

## JURISDICTION AND VENUE

5. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, because Plaintiff is a citizen of Georgia, neither Defendant is a citizen of Georgia, and the amount in controversy, exclusive of costs and interest, exceeds $75,000.

6. Garrison is subject to both general and specific personal jurisdiction in Georgia, where it owns or manages substantial real estate, has transacted business with Plaintiff, has committed fraud on Plaintiff and has caused tortious injury by

acts committed outside the state, pursuant to paragraphs (1), (2), and (3) of OCGA § 9-10-91.

7. Premier is subject to specific personal jurisdiction in Georgia, where it has transacted business with Plaintiff, has committed fraud on Plaintiff and has caused tortious injury by acts committed outside the state, pursuant to paragraphs (1) and (2) of OCGA § 9-10-91.

8. Venue is proper in the Albany Division of this Court pursuant to 28 U.S.C. § 1391(b)(2) and (3), because the events, acts and omissions giving rise to this action occurred in electronic communications to, from or with Plaintiff in this Division.

## BACKGROUND FACTS

9. In mid-2016, Garrison listed the Property for sale through an internet auction site operated by Ten-X, LLC. Premier was identified as the Seller; Todd Roffman, Vice President of Garrison, was identified as "Seller's Point of Contact;" and Omari Head, of Paramount Lodging Advisors, was identified as a "Listing Broker."

10. Plaintiff is informed and believes, and on that basis alleges, that Marriott requires a "Property Improvement Plan" (PIP") on transfer of any of its properties to advise prospective purchasers of the obligations to which their

purchase will be subject. As part of its franchising agreements, Marriott required notice from the operator of any Marriott property upon offering a property for sale so that Marriott could issue a current PIP.

11. Garrison included a PIP (the "Original PIP") among the offering documents. Plaintiff is informed and believes, and on that basis alleges, that at the time Defendants provided the Original PIP to Plaintiff and others who registered for the auction, Defendants were aware of Marriott's requirement that it obtain a new PIP for the buyer. Garrison delayed giving notice to Marriott until late July 2016, delaying Marriott's preparation of a new PIP appropriate for the transfer of the Property to a new buyer.

12. On or about July 15, 2016, Plaintiff was contacted in Albany, Georgia, by telephone and e-mail from Mr. Head, who told Plaintiff that the change-of-ownership PIP was required by Marriott, and that the cost of complying with it was estimated at about one million dollars.

13. Mr. Head did not disclose that the Original PIP was not the PIP prepared by Marriott for this transaction.

14. There was no way that, through the exercise of ordinary diligence, Plaintiff could have learned that a different PIP would be required by Marriott.

15. Also in July 2016, Mr. Head also informed Plaintiff that Marriott had

already approved plans for a 24-room expansion of the Property.

16. On or about August 9, 2016, unbeknownst to Plaintiff, Marriott issued the New PIP to "Owner/Franchisee Garrison Investment Group" for use with the transfer of the property to the auction winner.

17. The New PIP required improvements to the property that would cost more than twice as much to complete - a difference of over a million dollars - and would also reduce potential revenues by requiring removal of three rooms.

18. Although fully aware both that the New PIP would substantially increase the cost of acquiring the Property beyond what Defendants had previously disclosed to Plaintiff, that Plaintiff was relying on the Original PIP and on the estimates previously provided by Defendants, and that the New PIP meant that the information previously provided by Defendants was materially false, Defendants concealed the existence and content of the New PIP from Plaintiff.

19. Unaware of the New PIP, and in reliance on the Original PIP, Plaintiff made a bid to acquire the Property.

20. Plaintiff's original bid was not the highest bid.

21. Although they knew that the New PIP would raise the cost of acquiring the Property by approximately a million dollars, making the Property commercially uneconomical at the price levels obtained in the bidding, and that the

New PIP rendered the information previously disclosed by Garrison through its brokers materially false, Defendants did not disclose the existence or contents of the New PIP to Plaintiff and encouraged Plaintiff to increase his bid and enter the PSA.

22. In reliance on the Original PIP and the cost estimates provided by Garrison, Plaintiff increases his bid to match the highest bid. Ten-X then declared that Plaintiff had won the auction.

23. On August 10, 2016, Plaintiff signed a Purchase and Sale Agreement (the "PSA") to purchase the Property for $4,830,000.

24. The PSA contained a "Subject to Confirmation Addendum," which provided that the transaction was "subject to, and contingent upon, Seller approving such transaction" within fifteen business days, or by August 31, 2016.

25. Shortly after execution of the PSA, despite having the New PIP in their possession, Garrison and its brokers repeated previous representations that the estimated cost of compliance with "the change of ownership PIP" would be about a million dollars, or between $800,000 and $1.2 million.

26. Plaintiff is informed and believes, and on that basis alleges, that at the time Defendants provided these cost estimates, they knew that the estimates were materially inaccurate and significantly lower than the true costs would be.

27. Premier did not send Plaintiff a written Approval Notice on or before August 31, 2016.

28. As a result, the PSA by its own terms "terminated without further action" on August 31, 2016.

29. Despite the automatic termination of the PSA, Garrison pressured Plaintiff to make the $483,000 deposit called for in the PSA by threatening to sue Plaintiff and others for breach of the PSA if Plaintiff did not put $483,000 into escrow.

30. Unaware that he had been misled by Defendants and their brokers, and not realizing that the PSA had terminated on August 31, Plaintiff made the $483,000 deposit on September 8, 2016.

31. On September 14, 2016, still without any mention of the new PIP that had been in Garrison's possession for over a month, Mr. Roffman communicated to Plaintiff's counsel (a) that Garrison's cost estimates were "based on discussions with MGAC, our external third party project management firm that we've used on all our renovations over the last several years," (b) that MGAC's estimate for the 20-room expansion was $70,000 per room ($1.4 million) and (c) that "the change of ownership PIP" would cost "~$1.3-1.5mm."

32. On September 15, 2016, more than a month after Garrison had

- 7 -

obtained the New PIP, Mr. Head disclosed the New PIP to Plaintiff.  This was the first time that Plaintiff learned of the New PIP.

33. On or about October 18, 2016, MGAC provided Plaintiff with an estimate for compliance with the new PIP of just under $2.2 million.

34. MGAC also informed Plaintiff that, contrary to what Mr. Roffman had previously claimed, MGAC's estimate for the expansion had been $2,105,000 for a 24-room expansion.  This averaged out to $87,708.33, more than 25% higher than Mr. Roffman's representation of what MGAC's estimate had been.

35. Upon learning of the dramatically increased costs imposed by the New PIP and of the discrepancy between the room expansion estimate MGAC had actually provided Garrison and the substantially lower estimate falsely provided to Plaintiff by Garrison, Plaintiff notified Garrison that the terms for purchasing the Property previously agreed to were no longer acceptable, and proposed to rescind if Garrison would not agree to new terms appropriate to the facts.

36. On October 24, 2016, with Plaintiff's deposit in escrow, Defendants refused to negotiate, declared Plaintiff to be in breach and announced their intention to retain $483,000 deposit as liquidated damages.

## PROCEDURAL HISTORY

37. On October 28, 2016, Plaintiff filed an action against Garrison in the

United States District Court for the Central District of California, asserting solely claims arising pursuant to California's fair business practices statutes. Rescission of the PSA was among the remedies requested by Plaintiff in the California action.

38.   On November 8, 2016, Premier filed a demand for arbitration with JAMS in the Eastern District of Pennsylvania, claiming a right to arbitrate under the PSA. Garrison was not a party to Premier's arbitration demand.

39.   Plaintiff subsequently amended to add Premier as a defendant in the California action.

40.   On December 5, 2016, Defendants moved to dismiss the California action or, in the alternative, to stay it pending arbitration.

41.   On January 19, 2017, the District Court in California entered an order dismissing Plaintiff's claims against Premier for lack of personal jurisdiction in California. Having found that it lacked jurisdiction over Premier, the court did not order arbitration. However, it did stay Plaintiff's claims against Garrison pending arbitration between Plaintiff and Premier.

42.   Plaintiff subsequently dismissed the California action voluntarily, rather than pursue his claims against the two defendants in different courts.

## **FIRST CLAIM FOR RELIEF :  FOR RESCISSION**

## **(AGAINST PREMIER)**

43. Plaintiff incorporates the allegations of ¶¶ 1 through 42, above, as if repeated here in full.

44. Plaintiff could not have learned that the Original PIP submitted by Garrison as part of the offering documents was outdated and materially inaccurate, because Marriott would not communicate directly with Plaintiff regarding the Property until after Plaintiff executed the PSA.

45. Despite having actual knowledge of the New PIP prior to execution of the PSA, neither Garrison nor Premier disclosed either the existence or the contents of the New PIP to Plaintiff before execution of the PSA.

46. Having provided Plaintiff with the Original PIP and received a new and significantly more costly New PIP from Marriott before execution of the PSA, Defendants incurred an obligation to disclose the New PIP to Plaintiff before insisting that Plaintiff execute the PSA and make the $483,000 deposit.

47. Instead of disclosing the New PIP, Garrison and its agents explicitly confirmed the pertinence of the Original PIP and provided Plaintiff with cost estimates based on the Original PIP.

48. Garrison also knowingly misrepresented MGAC's estimate of the cost of the expansion that had been authorized by Marriott.

49. Plaintiff is informed and believes, and on that basis alleges, that

Defendants were aware that Plaintiff would not have gone forward with the transaction at the auction price if he had known about the New PIP, and Defendants intentionally withheld the New PIP, provided additional information based on the Original PIP, provided false information about expansion costs, and threatened litigation to induce Plaintiff to enter the PSA and to make the $483,000 deposit before Plaintiff had any opportunity to learn the truth.

50.   Plaintiff reasonably relied on the Original PIP as disclosed by Defendants as being the pertinent PIP, and on the cost estimates provided by Defendants, in executing the PSA at the stated price and in making the deposit.

51.   Plaintiff would not have bid for the Property, if he had known the truth.

WHEREFORE, Plaintiff prays for a judgment:

a.   rescinding the purchase and sale agreement *ab initio* for fraud in the inducement, mistake or other equitable ground;

b.   requiring Defendants to take all necessary acts to cooperate in the release and refund Plaintiff's deposit, with interest;

c.   awarding Plaintiff his costs of suit and attorneys' fees to the extent permitted by law; and

c.   awarding Plaintiff such other and further relief as the Court may deem

just and equitable.

## SECOND CLAIM FOR RELIEF : FOR DECLARATION OF RIGHTS (AGAINST BOTH DEFENDANTS)

52. Plaintiff incorporates the allegations of ¶¶ 1 through 51, above, as if repeated here in full.

53. Plaintiff contends that, if the PSA was lawfully entered in the first place and is not rescinded for fraud or mistake, then it terminated automatically on August 31, 2016, pursuant to the Subject to Confirmation Addendum, because Seller did not send a written Notice of Approval to Plaintiff within fifteen business days after execution of the PSA on August 10, 2016.

54. Plaintiff is informed and believes, and on that basis alleges, that Defendants contend that the PSA did not terminate until Premier sent a notice of termination on October 24, 2016.

55. If the PSA terminated on August 31, 2016, then Plaintiff retains all rights to the $483,000 deposited into escrow by Plaintiff on September 8, 2016, whether the PSA be rescinded pursuant to Plaintiff's First Claim for Relief or not.

56. On the other hand, if the PSA did not terminate on August 31, 2016, then entitlement to the deposit funds is dependent on the Court's resolution of Plaintiff's other claims.

57. To whatever extent any of Plaintiff's $483,000 deposit may remain in escrow or in the hands of any other third person at the time judgment is entered in this action, a dispute exists as to which of the parties is entitled to possession of such funds and of any interest that may have been earned on such funds.

58. A controversy thus exists between the parties, which can be resolved by the Court's resolution of Plaintiff's claims.

WHEREFORE, Plaintiff prays for a judgment:

a. declaring that the Purchase and Sale Agreement terminated according to its own terms on August 31, 2016, if not rescinded pursuant to Plaintiff's First Claim for Relief;

b. declaring Plaintiff's absolute and unconditional right to possession of the full amount of the $483,000 deposit, together with all interest earned on it;

b. awarding Plaintiff his costs of suit and attorneys' fees to the extent permitted by law; and

c. awarding Plaintiff such other and further relief as the Court may deem just and equitable.

### THIRD CLAIM FOR RELIEF :  FOR FRAUD
### (AGAINST GARRISON ONLY)

59.     Plaintiff incorporates the allegations of ¶¶ 1 through 58, above, as if repeated here in full.

60.     Garrison continued to conceal the existence and contents of the New PIP from Plaintiff even after execution of the PSA until Plaintiff had made the $483,000 deposit, with the intent that Plaintiff rely on the Original PIP and make the deposit.

61.     Plaintiff reasonably relied on the Original PIP disclosed by Garrison as being the pertinent PIP, when executing the PSA.

62.     Plaintiff reasonably relied on the good faith accuracy of the construction and renovation estimates provided by Garrison and its brokers, when making the $483,000 deposit.

63.     Plaintiff did not and could not learn the truth until October 18, 2016, when MGAC provided Plaintiff a $2,179,000 estimate to complete the New PIP, and also informed Plaintiff that the estimate it had provided to Garrison for completion of the approved room expansion was far higher than the $70,000 per room falsely represented to Plaintiff by Mr. Roffman.

64.     The information received from MGAC prompted Plaintiff to contact Garrison to discuss how best to deal with the gross disparity of the cost and consequences of the New PIP, which Garrison had concealed from Plaintiff.

65. Instead of responding to Plaintiff's invitation to discuss the new information, Garrison claimed that Plaintiff was in breach of the purchase and sale agreement, claimed that Defendants were released from any further obligations to Plaintiff, and claimed a right to retain Plaintiff's $483,000 deposit as liquidated damages.

66. Garrison's post-execution concealment of the existence and content of the new PIP, and under-representation of the actual estimated cost to complete the expansion of the hotel, were knowing and material misrepresentations made with the intent of inducing Plaintiff to put up $483,000 as a "deposit," and to proceed toward closing on the purchase of property that Garrison knew, or should have known, Plaintiff would not have agreed to if he had known the facts.

WHEREFORE, Plaintiff prays for a judgment:

a. for compensatory damages for fraud, in at least the amount of the deposit fraudulently obtained;

b. for punitive damages for fraud, to the extent permitted by law;

c. awarding Plaintiff his costs of suit and attorneys' fees to the extent permitted by law; and

d. awarding Plaintiff such other and further relief as the Court may deem just and equitable.

## FOURTH CLAIM FOR RELIEF :  FOR MONEY HAD AND RECEIVED

## (AGAINST BOTH DEFENDANTS)

67. Plaintiff incorporates the allegations of ¶¶ 1 through 66, above, as if repeated here in full.

68. The circumstances are such that plaintiff's $483,000, and all interest earned on it, should be returned to Plaintiff.

69. Defendants' failure to account for and release or return this money gives rise to a claim for money had and received in favor of Plaintiff, an award in an amount to be determined at trial.

WHEREFORE, Plaintiff prays for a judgment:

a. for the full amount of the $483,000 deposit, together with all interest earned on it;

b. awarding Plaintiff his costs of suit and attorneys' fees to the extent permitted by law; and

c. awarding Plaintiff such other and further relief as the Court may deem just and equitable.

## FIFTH CLAIM FOR RELIEF :  FOR BAD FAITH

## (AGAINST BOTH DEFENDANTS)

70. Plaintiff incorporates the allegations of ¶¶ 1 through 69, above, as if

repeated here in full.

71.     The actions of Defendants have been in bad faith, stubbornly litigious and have caused unnecessary trouble and expense so as to justify an award of Plaintiff's attorneys fees and expenses of litigation pursuant to O.C.G.A. § 13-6-11.

WHEREFORE, Plaintiff prays for a judgment:

a.  awarding Plaintiff his costs of suit and attorneys' fees to the extent permitted by law; and

b.  awarding Plaintiff such other and further relief as the Court may deem just and equitable.

## FIFTH CLAIM FOR RELIEF :  FOR PUNITIVE DAMAGES
## (AGAINST BOTH DEFENDANTS)

72.     Plaintiff incorporates the allegations of ¶¶ 1 through 71, above, as if repeated here in full.

73.     The actions of Defendants demonstrate intentional or willful misconduct and an entire want of care or indifference to consequences, so as to justify an award of punitive damages.

74.     As a result, Plaintiffs are entitled to recover punitive or exemplary damages from Defendants in an amount to be determined by the enlightened

conscience of the jury.

WHEREFORE, Plaintiff prays for a judgment:

a. rescinding the Purchase and Sale Agreement; or, if not rescinded, then declaring the agreement to have terminated on August 31, 2016;

b. declaring Plaintiff's right to the deposit and all interest earned on it;

c. awarding compensatory damages arising from Fraud, Money Had And Received, and such other claims for damages as may be appropriate;

d. awarding damages pursuant to O.C.G.A. § 13-6-11, including reasonable attorneys' fees and expenses of litigation;

e. awarding punitive damages in an amount determined by the enlightened conscience of the jury; and

f. awarding such other and further relief as is just and proper.

Respectfully submitted this 6th day of March, 2017.

BAKER DONELSON BEARMAN
CALDWELL & BERKOWITZ, PC

_____/s/Joshua Tropper_____
Joshua Tropper
Georgia Bar No. 716790
jtropper@bakerdonelson.com
Steven G. Hall
Georgia Bar No. 319308
shall@bakerdonelson.com
Monarch Plaza, Suite 1600
3414 Peachtree Road, N.E.
Atlanta, Georgia  30326
Telephone:  404.577.6000
Facsimile:   404.221.6501
*Attorneys for Plaintiff Nainesh Patel*

## DEMAND FOR TRIAL BY JURY

Plaintiff Nainesh Patel demands trial by jury of all claims for relief triable to a jury.

Respectfully submitted this 6th day of March, 2017.

BAKER DONELSON BEARMAN
CALDWELL & BERKOWITZ, PC

_____/s/Joshua Tropper_____
Joshua Tropper
Georgia Bar No. 716790
jtropper@bakerdonelson.com
Steven G. Hall
Georgia Bar No. 319308
shall@bakerdonelson.com
Monarch Plaza, Suite 1600

3414 Peachtree Road, N.E.
Atlanta, Georgia  30326
Telephone:  404.577.6000
Facsimile:   404.221.6501

*Attorneys for Plaintiff Nainesh Patel*